Thank you your honor. Oh and the plaintiffs in this action and we are here because the lower court has found that there's a safe harbor under the UCL that allows defendant SanDisk to define gigabyte as it does and we've briefed this and we've litigated this in great detail and I want to make this as simple as possible because you know as the court can see you know you know I'm at home I've been home there's filing fees there's appeals lightly and I would direct their attention to a case that the other side has sent had cited to which is Lopez v. Nissan and that's a classic example of where the UCL safe harbor is appropriate okay it was about odometers okay they sued Nissan because the odometers had a error rate. NITS had a regulation on odometers and in the regulation on odometers it allowed odometers to have a 4% error rate it was under a regulation that said handbook 44 standard for odometers okay and we don't have anything like that okay there is nothing in NITS that allows or makes it legal for SanDisk to define and I get into the details for the nitty details in my brief but I'll make it simple okay okay they point to NITS SI definitions SI definitions for metric with gigabytes is a non both our three plaintiffs have Microsoft devices computers or just computer that read memory gigabytes in the binary definition is 2 4 6 8 it's how it counts memory so you know how much memory can you adjust your server at all I'm having trouble hearing you and you're breaking up quite a bit okay you know what um I how am I now am I still breaking up yes but a little better okay I'll speak slowly our three plaintiffs have computer devices that read memory with gigabytes with a binary definition which counts to 64 gigabytes a flash drive that uses the decimal definition so in effect our name plaintiffs got six point eight seven five less in memory okay box the device this it says gigabyte they went out and bought a 64 gigabyte unit divided by two and they found out they had six point eight seven five less points to NITS that says we don't have to explain that you're going to get six point eight seven five because NITS allows us to use the decimal definition the problem is is the decimal definition is a metric unit a gigabyte or a byte BYTE is a non-metric thing so there is no authority in NITS like Lopez v. Nissan where there's a regulation on point handbook 44 that allows a 4% odometer error so what they do is they cherry-pick things within NITS that allows them to get there and they point to a next a NIST technical guide handbook SP 811 and the lower court and opposing counsel appointed to a provision that says you can use these SI metrics okay with the non-metric bit BIT the problem with that is we have a gigabyte it's not a bit it's not a BIT it's a BYTE okay under the metric system a B means Bell so technically all NITS says by metric definition Bell is the loudness of a unit so it's 1 billion and then it's the loudness of a decimal of a unit that's all we have in NITS if you're out in great detail my brief they should have done GI BYTE okay that is the recommended thing in NITS but again we're talking about SP 811 which is a technical guide for NITS writers so they so they don't confuse using G with Bell or vice versa when the opposing counsel points to account business and profession codes 1 2 3 1 3 which says basic units of weight and measure as published by NIST and doesn't distinguish between any types of manuals just says as published by NIST well then I would point out that we should go by what NIST published but if you look at okay it doesn't say that because you froze judges would you like me to ask mr. Flynn to telephone in I think we can manage but he might want to telephone in for a bottle okay you can use G with BYTE it okay the larger are you meant I would make I can't is that yeah I think you're gonna have to phone in we can't hear you mr. Flynn on the judges I'm gonna go ahead and turn the public audio off for a moment while we get this figured out mr. Flynn on the email that was sent if you can go ahead and find the the telephone information you can go ahead and place that call we'll get you in that way mr. Flynn's dropped from the call yeah wait for his call I'm gonna call him real quickly as well actually I think yeah let's let's give him a minute just because he'll end up crossing the telephone while he's trying to reach you while he's trying to get us I will resend the email you He just called me back since I called him earlier, and he is trying to connect via telephone at the moment. Okay, great. Olivia, let's give him another minute and then maybe try to call him one more time. I'm not sure what's going on. Okay, sounds good. There he is. Mr. Flynn, do you hear me okay? I do. I'm so sorry about this. That's all right. Looks like we've got you better on the phone. Judge Thomas, the public audio is on now. All right. Very good. Mr. Flynn, Judge Okuda had a question. Yes. I had asked why we wouldn't rely on Special Publication 811 as being covered by the Cal Business and Profession Codes, 12313, which references to any definition of units of weight measured as published by the National Institute of Standards and Technology, and it appeared that Special Publication 811 is such a publication. Could I answer that? What I would say is it is a technical guide for NHTSA riders, and I would contrast that with Lopez v. Nissan, where they pointed to a regulation on the error rate for odometers, the standard of 4% from NHTSA. So this is technically, you know, again, we're in a safe harbor. It's something that a statute has to allow, and I understand what the California statute says, but technically we are reading a technical guide for NHTSA riders. Sure they published it, but it's for a technical guide for NHTSA riders, and then my next point, if you follow the technical guide for NHTSA riders, we can't cherry pick. It goes on to say, if you have a byte, a B-Y-T-E, you're supposed to use not the S-I prefix, but G-I, which is the binary one, and that's, if you read our brief, I lay out that argument, and then there's another provision in this that says, that wasn't an issue in Lopez v. Nissan, that says you're supposed to use the customary terms, and I made this point earlier, and I think it got garbled, and this is in our brief, is it says, in the same publication, it says, descriptive information expressed in customary terms that are widely used and recognized, okay? That is one of the other things the NHTSA rider is told in this appendix, okay? And I already told you, our three named plaintiffs are looking at their computer, and it says GB, meaning the binary definition. They go out and buy an accessory to a computer. Literally we're talking about the accessory, and it says GB, and it's 2468-64-264. So the customary thing is the two things mean the same. They have no way of knowing it's 6.875 less. They take it home, and they plug it in, so if you wanna use that and say it's published, you have to look at the other provision of SP-811 that says we want good communication, and good communication, you need to use it in the customary terms. Well, the thing is, we get the inferences on a motion to dismiss, and a motion to dismiss, we say, and as a factual matter, the computers use the binary definition. They were 64 devices and 264 devices, again, divided by two. They went out and bought an accessory to the computer that were also sold 2468, not divisible by 10, the decimal, but divisible by two. So SanDisk, if it wants to follow SP-811, okay, it needs to use the customary term to avoid confusion. So the court below, with all due respect, and opposing counsel are cherry picking this one provision of NITS, again, in the technical guidance, okay? There are two other provisions that says if you wanna use BYTE, B-Y-T-E, you have to use GI, which they did not use. And the other thing is, if you're going to use descriptive information, and the amount of, and again, we're counting here, we're not measuring, we're counting, the descriptive information, it needs to be the customary terms that people understand, and this is all laid out in great detail in our brief. And NITS tells you, in a situation where your computer uses the binary, and you're gonna go out and buy an accessory for the binary, the customary term is it would mean the same thing. And that's how we got this case, that's how we have these plaintiffs, is they try to play video games, they plug in the accessory, they don't have enough memory, and they're like, what's going on here? And so, to me, I think Lopez v. Nissan is the gold standard. It's a NITS standard that says you can have a 4% error, okay? We don't have that NITS clear language here that can invoke a safe harbor. If you follow NITS the way the technical guide says to follow NITS, and we lay this out in our introduction, GB means GIGI Bell, and Bell, B, the metric is Bell, it's a decimal unit to measure sound, okay? So they have an illogical position, and it's also at odds with what a safe harbor is supposed to be, which is, you know, the law required me to do it, you shouldn't sue me for it. Well, just looking at SP811, I look at two other provisions where it says, if you're gonna use BYTE, you need GI, okay? And if you were to do that and you were to look it up, it would actually equal the binary, and they wouldn't get 6.78 left. And then you gotta read on in SP811, and this is cited in my brief, it's section, what is it? It's in my brief, you have to use customary terms that are widely used and recognized. Everyone here who has a computer that is Microsoft, okay, which is most systems, most gaming devices are Microsoft, when it says GB, it's binary. So again, I don't know why the accessory to a commonly used device is using a different definition. And if we go by their technical guide, they have two choices. They have to call it GI BYTE, which they don't. But also they should follow the other provision of NITS, which is, if a commonly used term for gigabyte to be the binary definition, you should explain and clearly understand in terms that you're getting 6.785 less. And that was the point I made in our deceptive claims, the UCL claims in California court. Our people are confused. And it's not Nissan v. Lopez, where you can point to handbook 44, standards for odometers. You're allowed to have a 4% error, therefore you can't sue for a 2% error, okay? Here, even when I look at their own publication, if it, oh, and by the way, in their brief, they agree that a gigabyte BYTE is a non-metric unit, okay? So there are two other provisions. They stop, they give you one section that says the SI prefix can be used with a bit, which is a BIT, which is a zero or a one, but we're talking about bytes, BYTE. Mr. Flynn, I think we have your argument in hand and you only have a minute and 30 left. Do you want to reserve? Yeah, I want to reserve. Okay. Thank you very much. Mr. Weeble? May it please the court, Tony Weeble for the defendant Appley Sandisk, LLC. This is now the fifth court to which appellant's counsel has turned with their theory that it is unlawful to use the decimal or metric definition of the symbol GB for gigabyte to mean 1 billion bytes. All of the arguments in their briefs and the arguments they've made today have been rejected by every court to consider them. This court should likewise affirm dismissal of what the district court did for three independent grounds and I list those grounds and then I also want to address some of the points that were raised by opposing counsel a minute ago. The first ground obviously is the safe harbor issue and that's the easiest and the most legal of the issues to determine on a motion to dismiss. The second ground is the reasonable consumer standard as it applies to the use of GB in a definition that is both valid and preferred by the government. And lastly, the third ground to affirm dismissal is the fact that everyone in the industry has been using this decimal definition for more than 20 years and when I say industry, I'm referring to all the makers of these devices and similar devices. But turning first to the safe harbor argument because that seems to be the focus of plaintiff's argument as well as the first argument on which the district courts dismissed this case. So with the safe harbor, this case is all about the G and the GB, right? There's no dispute that in this situation, consumers were looking at the GB and saying, oh, that's bytes, right? That's gigabytes. There's no disputes in the complaint. Everybody admits that we're talking about the definition of a gigabyte. That G is from the metric system and there's really no dispute about that, that the G comes from the metric system. Controlling precedent in both this court and the California Court of Appeals says that if conduct is clearly permitted by the law, it is not actionable. This case is the perfect example of a case that is covered by the safe harbor and this is why. In fact, this is the case that Congress envisioned more than 150 years ago in 1866 when it first declared that it shall be lawful throughout the United States to employ the weights and measures of the metric system. They wanted to create a safe harbor so that people could use the metric definitions for these terms and the prefix G or giga is certainly, and there's no dispute about it, a prefix of the metric system. Now that walks us right to where plaintiff's counsel was arguing about whether or not we're really dealing with a metric term here. They say that we've admitted that gigabyte is a non-metric term and I think that does some explaining. They referenced gigabels or decibels and that the B should mean a bell and not a byte. And this is what special publication 811 actually says. Now fortunately, even though they raised this argument for the first time about bells and and in the full text of special publication 811 that they have submitted to this court as exhibit two to their request for judicial notice. And the court can take a look at section 5.1 of special publication 811. And 5.1 actually, the section starts on page 133 of the record. We just didn't include all of it in the record originally because it wasn't necessary, but now that they've raised this argument, we need to look at the full document that they've submitted with their request for judicial notice. Section 5.1 discusses non-metric units or non-SI units that are approved and accepted for use with the metric system, with the system that's approved for use in the United States. And there's four categories that NIST discusses in this section 5.1. One of the categories or one of the units that's not an SI unit but is approved for use is a bell with the symbol B as my opposing counsel has pointed out. But where they're incorrect is they claim that a bell is a metric unit. It's actually not. It's a non-metric unit, but it's been approved for use with the SI. If you take a look at section 5.1.3, there's another category of units that are not metric units but have been approved by the Department of Commerce for use with the metric system. Those units include, and they give a list of some examples. One of those examples is a BIT, the computer data unit for BIT. And then they reference standards that are published by the International Electrotechnical Commission as well as the International Organization for Standardization. And then they refer the reader to the bibliography to reference five for the specific list of those standards that have been published by those organizations. So there in section 5.1.3, NISD has stated that a BIT, just like a bell, is appropriate for use with the SI system and is therefore incorporated as part of the SI system. Now the bibliography references there, if you follow that to reference five, that page is in the record. That's on page 134 of the record in this case. And that contains a note from the Department of Commerce, a note that we quoted very heavily from in our briefing, and a note that again explains that one kilobit is equal to 1,000 bits and not the binary definition, 1,024 bits. And then it goes on to explain that the IEC, which is the International Electrotechnical Commission, has published a standard for binary prefixes. So if you want to express the number, a binary number, the prefix you should use is this and not the GB, right? So they set out those prefixes and they give an example using BIT and they note that the capital letter B stands for BIT. That's not really in dispute here. Everybody, that's common in history, everybody understands that the capital letter B in this is a prefix, prefixes, as long as you're using the decimal definition for those prefixes. And that's exactly what NIST is saying in this publication. Now, to respond to the argument that was made that NIST Special Publication 811 is somehow just a technical guide and is not an official declaration of how to use the International System of Units, the SI system or the metric system in the United States, we need only look at what was published by the Department of Commerce in the Federal Register in 2008. And that document, again, is another document that Appellant's Counsel has asked this court to take judicial notice of. So that's Exhibit 1 to their request for judicial notice. It's a publication from the Federal Register. It's volume 73, number 96, dated May 16, 2008. And on page 28432, the Department of Commerce declares in this Federal Register notice that Special Publication 330 and Special Publication 811 are together, those publications provide the legal interpretation of and guidelines for use of the SI in the United States. This is the interpretation. This is the legal interpretation of how to use these metric prefixes, how to use the letter G in this situation. And then, obviously, going to Special Publication 811, you'll see the language that I just pointed the court to, where it could not have been more expressed that in this industry, right, when you're dealing with this technology, information technology, you are not to use these metric prefixes to mean a binary number. They only mean the decimal number. In fact, the NIST restated this. They stated it three times. Originally, they stated it in the Federal Register in 1998. That's in the record at page 128 of the record. You'll see that notice from the Federal Register where they first set forth some of the tables with SI units, and they have Table 5. Table 5 is the table that lists all of the metric prefixes, K, M, G, kilo, mega, giga, et cetera, and they say these mean 1,000, 1,000,000, 1,000,000,000, and right beneath that table, as you'll see in page 120 of the record, a very clear note that these prefixes should not be used with binary definitions. They only mean the decimal definitions, and NIST declares an express example. Again, they say that 1 kilobit is 1,000 bits and not 1,024 bits, which would be the binary definition. It could not be more clear. Most recently, and Special Publication 330, which, again, is with Special Publication 811, the legal interpretation of the SI in the United States, Special Publication 330 was just revised this past year and published. Because of that, it's not yet in the record, but it is certainly something, it's a legislative fact of which this court can certainly look to. Again, in Special Publication 330 at page 23, the Department of Commerce again sets forth a table that looks just like Table 5 from the 1998 notice, and again, there's a note right next to it that says 1 kilobit equals 1,000 bits and not 1,024 bits, and then it actually, in the newest one, it lays forth the alternative prefixes, the binary prefixes that should be used when one wants to express a binary number. So it could not be more clear that the policy of the United States, the legal definition of the symbol GB is the decimal definition that is used by Sandisk and every other maker. That standard was published more than 20 years ago. It's been used for the past 20 years. The Northern District of California made that declaration also in the Suzuki case, which is cited in our papers way back in 2007. Everybody's been relying on that and using it. So it would be absurd to say that this is not the preferred definition. In fact, for that very reason, every court to look at this issue has recognized that the decimal definition of GB has been the approved and preferred definition by the United States. The California legislature in the sections where the California legislature has adopted the publications of NIST to govern all transactions in California. Your Honor, I'd like to if there are any questions about the safe harbor, I would like to answer them now before I move on to the next pillar of our next round on which this court could affirm dismissal of the case. Could you move on? I'm sorry. Did you address the breach of contract issue? Oh, certainly, Your Honor, the breach of contract, because the contract claim is a little bit outside here. It's contract. It's something different. But that's an easy one. First, plaintiffs do not allege that they had a contract with Sandisk. In fact, in each, if you look at paragraphs one, two, three of their complaint in the record, it each plaintiff alleges that they purchased this product at a retail store. They didn't purchase it from Sandisk. Now, certainly there are situations where you could have a breach of warranty claim where there is an applied warranty that passes from the manufacturer down through the consumer, but not a breach of contract case. Right. These devices weren't sold by Sandisk to these consumers. So there is no contract claim to begin with. But even if there were the California business and professions codes that we've cited in our paper section, you know, one, two, three, one, three and one, two, three or one, which describe use of metric, the metric system and also the use of definitions and measures published by NIST. Make it so that the GB, the decimal definition of GB governed that contract, and includes all of the language on that product. If there were a contract, and this is what the district court noticed in her original opinion, dismissing the original motion to dismiss that the terms of the contract include the definition that Sandisk printed right on the back of the package, that one GB equals one billion bytes. So for all those reasons, the contract claim really hasn't been a serious claim in this case. It was dismissed with prejudice. Originally, they attempted to replete it. It was dismissed again, and they haven't really made an attempt to defend it on their contract between Sandisk and these plaintiffs. And any other questions, your honors, before I turn to the reasonable consumer standard? We've got about a little over a minute, so I know. And this isn't this is an easy one. The test, obviously, that applies to the consumer deception claims in this case is the reasonable consumer test. And as this court has explained, what that means is the complaint has to show a probability that the targeted consumers and not just some targeted consumers, but a significant portion of the targeted consumers, when they're acting reasonably under the circumstances, are going to be misled in these circumstances or could be misled in these circumstances. And this court has used what it calls its judicial experience and common sense to apply that standard. And that's the case we have here is so much easier than the cases where this court has has applied that standard on a motion to dismiss, notably in the diet soda cases that are cited in our papers. That's the Becerra versus Dr. Pepper seven up and related cases where they were looking at the definition of the term diet. That term was not even a standard published by the federal government. Here it is. It's much more clear in this case that reasonable consumers could not be confused. My time has expired. If you have any more questions, I'm happy to answer them. Thank you, counsel. We will hear rebuttal. Mr. Flynn. Flynn appears to have dropped off. OK, well, I think at this point, given the technical issues that we probably should submit this case and proceed to the next one. All right. All right. This case just started to be submitted for decision and will proceed to argument in the case of state of Rhode Island versus alphabet.
judges: Thomas, Ikuta, Nguyen